UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH P.,[1]

        Plaintiff,

    v.

MARTIN O'MALLEY, Commissioner of Social Security,[2]

        Defendant.

Case No.  23-cv-03853-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 11, 15

## I.    INTRODUCTION

Plaintiff Joseph P. moves for summary judgment to reverse the decision of Defendant Martin O'Malley, Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 11.  Defendant cross-moves to affirm.  ECF No. 15.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[3]

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

[3] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 4, 5.

## II.    PROCEDURAL HISTORY

On August 6, 2014, Plaintiff filed an application for Social Security Disability Insurance benefits with a disability onset date of August 7, 2012.  AR 67.  The Commissioner denied his claim on February 18, 2015, and again on August 11, 2015.  AR 104, 110.  On August 20, 2015, Plaintiff asked for a hearing before an Administrative Law Judge ("ALJ").  AR 116.  On March 12, 2017, the ALJ held a hearing and heard testimony from Plaintiff and a vocational expert ("VE").  AR 34-66.  The ALJ issued an unfavorable decision on May 23, 2017.  AR 12-33.  On April 26, 2018, the Appeals Council denied Plaintiff's request for review.  AR 1-6.  Plaintiff then filed a civil action in this Court (18-cv-03193) seeking judicial review of the Commissioner's decision.  On June 11, 2019, the Court remanded the case for further proceedings.  AR 554-581.

On February 4, 2020, the ALJ held another hearing and again heard testimony from Plaintiff and a VE.  AR 479-503.  The ALJ issued a second unfavorable decision on April 17, 2020.  AR 453-78.  Plaintiff then filed a second civil action in this Court (20-cv-08253) seeking judicial review of the Commissioner's decision.[4]  On December 30, 2021, the Court remanded the case for further proceedings.  AR 819-43.

On January 5, 2023, the ALJ held a third hearing and again heard testimony from Plaintiff and a VE.  AR 764-87.  The ALJ issued a third unfavorable decision on May 4, 2023.  AR 738-63.  This case followed on August 1, 2023, with Plaintiff again seeking judicial review pursuant to 42 U.S.C. § 405(g).

## III.    ISSUES FOR REVIEW

Plaintiff raises six issues on appeal:

1. Did the ALJ err in evaluating whether Plaintiff's impairments met the "paragraph C" criteria of Listing 12.06?

2. Did the ALJ err in discrediting Plaintiff's statements?

3. Did the ALJ err in discrediting the testimony of Plaintiff's mother?

---

[4] "If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge or administrative appeals judge becomes the final decision of the Commissioner after remand."  20 C.F.R. § 404.984(d).

4. Did the ALJ err in his assessment of the medical opinions?

5. Did the ALJ err in adopting the "paragraph B" findings in the prior decision?

6. Did the ALJ err in assessing whether Plaintiff would be capable of performing substantial gainful activity?

## IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Court may set aside a denial of benefits only if "it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).  Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (cleaned up).  Under this standard, the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison*, 759 F.3d at 1009 (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the decision of the ALJ.  *Id.* (citation omitted).  "'Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.*  The Court is

1  "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up); *Pinto v. Massanari*, 249

2  F.3d 840, 847 (9th Cir. 2001) (courts "cannot affirm the decision of an agency on a ground that the

3  agency did not invoke in making its decision.").

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

6  A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any

7  substantial gainful activity by reason of any medically determinable physical or mental

8  impairment which can be expected to result in death or which has lasted or can be expected to last

9  for a continuous period of not less than twelve months" and (2) the impairment is "of such severity

10  that he is not only unable to do his previous work but cannot, considering his age, education, and

11  work experience, engage in any other kind of substantial gainful work which exists in the national

12  economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

13  To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential

14  analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same

15  standard for supplemental security income). The claimant bears the burden of proof at steps one

16  through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

17  At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

18  gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

19  involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the

20  ALJ determined Plaintiff had not performed substantial gainful activity since August 7, 2012. AR

21  743.

22  At step two, the ALJ decides whether the claimant's impairment or combination of

23  impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

24  claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

25  (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled.

26  20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe

27  impairments: "anxiety disorders (including panic disorder and agoraphobia); depressive disorder;

28  personality disorder; spine disorder; obesity; and urinary tract disorder." AR 744.

United States District Court
Northern District of California

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 744.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except: the individual can occasionally lift and/or carry twenty pounds for but frequently lift and/or carry ten pounds; the individual can stand and walk six hours in an eight-hour workday with normal breaks; and sit six hours in an eight-hour workday with normal breaks; the individual can push and pull as much as the person can lift and carry; the individual can occasionally climb ramps and stairs; frequently balance, stoop, kneel, and crouch but occasionally crawl; the individual can occasionally climb ladders, ropes or scaffolds; the individual can perform low-stress work, defined as simple, routine tasks involving simple work-related decisions and occasional workplace changes; work require no in-person interaction with the general public whether by telephone or in-person; the individual can

United States District Court
Northern District of California

have only occasional workplace changes; in addition the individual can briefly but occasionally interact with co-workers that does not involve teamwork; and occasional interaction with supervisors.

AR 749-50.  Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.  AR 754.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[5] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[6]  *Id.*  Here, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including as a router clerk, price marker, and assembler of small parts.  AR 754-55.  As such, the ALJ determined Plaintiff was not disabled as defined by the Social Security Act.  AR 755.

**B.      Step Three**

Plaintiff argues that substantial evidence did not support the ALJ's finding that his mental

---

[5] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant."  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*

[6] The DOT classifies jobs by their exertional and skill requirements.  20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto*, 249 F.3d at 846 (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

1   health impairments did not meet the paragraph C criteria of listing 12.06 for anxiety disorder.

2   Pl.'s Mot. at 8-15.

3       **1.      Legal Standard**

4       At step three, the ALJ considers whether the claimant meets or equals a listed impairment.

5   20 C.F.R. § 416.920a(d)(2).  "A generalized assertion of functional problems is not enough to

6   establish disability at step three."  *Tackett*, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1526).

7   Further, "[t]he mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P, § 4.12

8   is not sufficient to sustain a finding of disability."  *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir.

9   1990).  "For a claimant to show that his impairment matches a listing, it must meet all of the

10  specified medical criteria.  An impairment that manifests only some of those criteria, no matter

11  how severely, does not quality."  *Sullivan*, 493 U.S. at 530.

12      In determining whether a claimant with a mental impairment meets a listed impairment, the

13  ALJ must follow a special technique to evaluate the claimant's symptoms and rate their functional

14  limitations.  20 C.F.R. § 404.1520a(a).  The specified medical criteria are broken up into three

15  categories: "paragraph A" criteria, "paragraph B" criteria, and "paragraph C" criteria.  20 C.F.R. §

16  404, Subpt. P, App. 1 at 12.00.  The ALJ must consider: (1) whether specific diagnostic criteria

17  are met (paragraph A criteria); and (2) whether specific impairment-related functional limitations

18  are present (paragraph B and paragraph C criteria).  20 C.F.R. § 404.1520a(b).  The criteria in

19  paragraph A substantiate medically the presence of a particular mental disorder and differ

20  depending on the particular listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(a).  The

21  criteria in paragraphs B and C, on the other hand, describe impairment-related functional

22  limitations that are incompatible with the ability to do any gainful activity.

23      To meet or equal listing 12.06 (anxiety disorder), a claimant must satisfy (1) paragraphs A

24  and B, or (2) paragraphs A and C.  20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(A)(2).  To satisfy the

25  paragraph B criteria, a claimant's mental disorder must result in an "extreme" limitation of one

26  area, or "marked" limitation of two of the following four areas, of mental functioning: (1)

27  understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or

28  maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404, Subpt. P, App. 1 §

United States District Court
Northern District of California

7

1    12.00(A)(2)(b).

2          "The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02,

3    12.03, 12.04, 12.06, and 12.15."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1).  Specifically,

4    the paragraph C criteria provide an alternative means of demonstrating disability for those

5    claimants who experience "serious and persistent mental disorders" but whose "more obvious

6    symptoms" have been controlled by medication and mental health interventions.  *Id.*  To satisfy

7    the paragraph C criteria, a claimant must show his mental impairment has existed for at least two

8    years and that (1) he relied, "on an ongoing basis, upon medical treatment, mental health therapy,

9    psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of

10   your mental disorder," and (2) despite his diminished symptoms and signs of his mental disorder,

11   he has achieved only "marginal adjustment," meaning "minimal capacity to adapt to changes in

12   your environment or to demands that are not already part of your daily life."  20 C.F.R. Pt. 404,

13   Subpt. P, App. 1 § 12.00(G)(2)(b)-(c).

14         **2.    Analysis**

15         Having reviewed the ALJ's decision and the administrative record, the Court finds the ALJ

16   properly assessed the evidence when analyzing Plaintiff's impairments, and substantial evidence

17   supports his step three finding.  First, the ALJ concluded that the severity of Plaintiff's mental

18   impairments did not meet the paragraph B criteria for Listing 12.06(c) because they did not cause

19   at least two "marked" limitations or one "extreme" limitation.  AR 744.  The ALJ then determined

20   the evidence failed to establish the presence of the paragraph C criteria "because it does not show

21   claimant has 'serious and persistent' mental disorder over a period of two years with evidence of

22   both: medical treatment, mental health therapy, psychosocial supports, or a highly structured

23   setting that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

24   marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to

25   demands that are not already part of one's daily life."  AR 745.  In making this finding, the ALJ

26   noted Plaintiff's mental health treatment records "show minimal mental health treatment and

27   consistently indicate the claimant's primary problems are his untreated obstructive sleep apnea and

28   medical noncompliance."  *Id.*  The ALJ provided a comprehensive summary of the evidence in

United States District Court
Northern District of California

8

1  support of this decision.  AR 745-49.

2  On October 18, 2012, Rolf Palmer, M.D., performed an initial psychological evaluation on

3  Plaintiff that was normal, except for anxious speech.  AR 421, 746.  Dr. Palmer diagnosed

4  Plaintiff with major depressive disorder and panic disorder versus generalized anxiety disorder and

5  assigned a GAF score of 56, consistent with mild to moderate symptoms.  AR 421, 746.  Dr.

6  Palmer noted that Plaintiff was referred to partial hospitalization program "but didn't stick [with]

7  it."  AR 421, 745.  On November 1 Dr. Palmer noted that Plaintiff was improving.  AR 420, 746.

8  Plaintiff reported he was tired from Zoloft but that could also be due to his obstructive sleep apnea

9  or irregular sleep schedule (including staying up until 4:00 a.m. playing computer games).  *Id.*  On

10  November 26 Dr. Palmer observed Plaintiff was "mildly depressed, mildly anxious, but above all

11  fragile, defensive."  AR 420.  On December 20 Plaintiff reported "doing better," on an increased

12  dose of Zoloft, and Dr. Palmer found Plaintiff's mood was excellent, and he had a normal mental

13  status examination.  *Id.*  The ALJ noted the 2012 medical records showed one voluntary

14  psychiatric hospitalization from September 29 to October 11, 2012, but found they were

15  inconsistent with the paragraph C criteria because they showed Plaintiff was stable with a Global

16  Assessment of Functioning ("GAF")[7] score of 56 by October 18.  AR 331-34, 421, 746.

17  The ALJ also found that the medical records from 2013 through 2017 were inconsistent

18  with the requirements of paragraph C because they showed minimal treatment with significant

19  medical noncompliance.  AR 746-47.  For example, the ALJ noted that Plaintiff did not see Dr.

20  Palmer from November 26, 2012, until March 2, 2013.  AR 418-22, 746.  On that date, Dr. Palmer

21  concluded that Plaintiff's medical problems were not severe as he claimed they were, and Plaintiff

22  was not doing what he could do to get treated.  AR 419, 746.  Dr. Palmer specifically noted that

23  Plaintiff's chronic fatigue was due to a failure to use his CPAP machine.  AR 419, 746.  As the

24

25  [7] A Global Assessment of Functioning score is a numerical summary of a clinician's judgment of
an individual's psychological, social, and occupational functioning on a hypothetical continuum of
26  mental health on a scale of one hundred.  *See* Diagnostic and Statistical Manual of Mental
Disorders, 32-34 (4th ed. text rev. 2000).  A GAF score of 61-70 represents some mild symptoms
27  or some difficulty in social, occupational, or school functioning.  A GAF score of 51-60 represents
moderate symptoms or any moderate difficulty in social, occupational, or school functioning.
28  A GAF of 41 to 50 is consistent with a serious impairment in occupational, social, or school
functioning.

United States District Court
Northern District of California

ALJ noted, during 2013, Dr. Palmer often found Plaintiff's mental status examinations were largely normal and he was not psychiatrically unstable, but that he remained apathetic and fatigued due to a failure to comply with his sleep apnea treatment.  AR 417-19, 746.

On multiple occasions in 2014, Dr. Palmer found Plaintiff's mental status examinations were largely normal.  AR 416-22, 747.  Additionally, the ALJ noted that on March 21, 2014, Plaintiff told Dr. Palmer he "got his job back, then resigned," indicating that Plaintiff's unemployment was volitional.  AR 416, 747.  The ALJ also noted that Plaintiff reported he had prepared tax returns for five other people, which demonstrated that he was less limited in concentrating, persisting, or maintaining pace than he alleged.  AR 416, 747.

The ALJ noted that again in 2015 Plaintiff's sporadic treatment visits showed generally normal mental status examination findings.  AR 416, 747.  Additionally, although Plaintiff consistently complained of fatigue and tiredness, he "was steadfast in insisting that 'nothing helps.'"  AR 429, 444, 747.  In 2016, sporadic examination showed generally normal mental status examination findings.  AR 445, 748.  As the ALJ noted, Dr. Palmer attributed the majority of Plaintiff's problems to his untreated obstructive sleep apnea.  AR 444-45, 748.

Plaintiff's sporadic treatment visits with generally normal mental status examination findings continued in 2017.  AR 444-45, 748.  On February 10 Dr. Palmer noted that Plaintiff "never leaves his house or bed [due] to fatigue," which he attributed to obstructive sleep apnea.  AR 445.  Dr. Palmer noted that Plaintiff was not significantly depressed, but he "blames everyone for the blocks they set up to prevent progress."  *Id.*  The ALJ noted that Dr. Palmer suggested Plaintiff attempt some type of computer-based work, but Plaintiff rejected the suggestion.  AR 736, 748.  The ALJ also noted that, at a visit on December 1 Plaintiff reported he had taken a trip with his family to Mendocino, which the ALJ found inconsistent with Plaintiff's allegations of disabling agoraphobia.  *Id.*

Plaintiff argues the ALJ erred in questioning the agoraphobia diagnosis of his primary care provider, Russell Alpert, M.D.  Pl.'s Mot. at 11-12; *see* AR 745 ("Although Dr. Alpert diagnosed agoraphobia, this diagnosis is unsupported by specialized psychiatric treatment records and appears to be based primarily on the claimant's report that he does not like leaving his home.").

1    However, whether the requirements of Listing 12.06 are met or equaled depends upon the limiting

2    effects of the impairment(s) in question, not upon a specific diagnosis.  *See* 20 C.F.R. Part 404,

3    Subpt. P, App'x 1, § 12.06.  As Plaintiff himself concedes, at step two the ALJ found his severe

4    impairments included anxiety disorders (including panic disorder and agoraphobia).  Pl.'s Mot. at

5    12; AR 744.  Further, as the ALJ noted, such symptoms were repeatedly found to result from a

6    failure to comply with treatment for his obstructive sleep apnea.  AR 748.

7        Next, Plaintiff argues the ALJ erred in finding "minimal treatment" and "significant

8    medical noncompliance" as evidence that is inconsistent with the paragraph C criteria.  Pl.'s Mot.

9    at 12-14.  However, Listing 12.06(C) requires a mental disorder that is "serious and persistent,"

10   and the ALJ's finding that Plaintiff received only minimal treatment goes toward showing this

11   requirement was not met.  AR 746; *see* 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.06(C).  With

12   respect to the ALJ's reliance upon instances of non-compliance, Plaintiff appears to argue that

13   such evidence may not be considered because they are due to a mental disorder.  Pl.'s Mot. at 13-

14   14.  However, the ALJ may consider such evidence where it is attributable to a claimant's

15   "personal preference" rather than a mental impairment.  *See R.S. v. Kijakazi*, 2022 WL 888439, at

16   *9 (N.D. Cal. Mar. 25, 2022); *Chapple v. Berryhill*, 2017 WL 3721584, at *12 (N.D. Cal. Aug. 29,

17   2017).  The ALJ noted numerous instances in the record where Plaintiff's complaints focused on

18   fatigue, tiredness, and apathy, and that his doctor opined these symptoms resulted from obstructive

19   sleep apnea, a condition for which Plaintiff had been noncompliant with treatment.  AR 416-22.

20   Dr. Palmer even stated that Plaintiff had not improved because he was "generally not hearing what

21   [he] suggest[ed]."  AR 419.  Dr. Palmer noted that although Plaintiff "claims his medical problems

22   are severe," in fact "they are not and he is not doing what he can do to stop it . . . or get it treated."

23   *Id.*  An ALJ may consider such noncompliance when assessing a claimant's impairments under

24   Listing 12.06(C).  *See* 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.00G2b.

25       Plaintiff also argues the ALJ erred in referencing his stable status, improvement with

26   medications, and "unremarkable mental status examinations" as evidence that his impairments did

27   not satisfy the requirements of Listing 12.06(C).  Pl.'s Mot. at 14-15; AR 745-49.  Instead,

28   Plaintiff argues that any stability he experienced was the result of structuring of his life to avoid

stressors.  Pl.'s Mot. at 14 ("[R]elying on medications while structuring one's life to avoid stressors is wholly consistent with the requirements of paragraph C.").  However, Plaintiff's documented repeated noncompliance with treatment and his refusal, in Dr. Palmer's estimation, to do what he could do to stop or treat his medical problems contradicts his claim that his unremarkable mental status examinations were the result of a carefully structured life.  AR 419 ("[Plaintiff] claims his medical problems are severe (they are <u>not</u> and he isn't doing what he can . . . .") (emphasis in original).  Additionally, the evidence in the record reflecting normal and stable mental status examinations runs contrary to the purpose of the Listed impairments.  *See Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) ("Listed impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary . . . .  Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." (citation and internal quotation marks omitted)).

Plaintiff speculates that the ALJ may have found that his mental impairments did not meet the two-year durational requirement found in Listing 12.06(C).  Pl.'s Mot. at 10 ("The ALJ repeatedly referenced [Plaintiff's] two-week hospitalization and subsequent GAF score of 56, possibly suggesting that [he] did not satisfy the two-year durational requirement of the C criteria.").  However, the ALJ's reference to a single hospitalization, followed by a GAF score consistent with mild to moderate symptoms, merely supports his finding that Listing 12.06(C) was not met.  AR 746; *see* 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.06(C).

Finally, Plaintiff argues the ALJ erred in noting that Dr. Palmer suggested he attempt some type of computer-based work.  Pl.'s Mot. at 15; AR 736, 748.  Plaintiff claims that although Dr. Palmer may have felt it beneficial for Plaintiff to attempt computer-based work from home, it did not equate to a finding that Plaintiff was capable of performing full-time, competitive employment in a work setting.  Pl.'s Mot. at 15.  However, the ALJ noted Dr. Palmer's suggestion as one among many reasons why treatment records were inconsistent with meeting the paragraph C criteria, not that it alone equated to such a finding.  AR 748.

In sum, Plaintiff's disagreement with the ALJ's assessment of the medical evidence and

United States District Court
Northern District of California

1   other evidence with respect to the step three findings does not constitute reversible error. *See*

2   *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Kennedy*, 738 F.3d at 1176. As the ALJ's

3   decision is supported by substantial evidence, the Court finds Plaintiff has failed to meet his

4   burden of proof at step three.

5   **C.      Plaintiff's Testimony**

6          Plaintiff next argues the ALJ erred in evaluating his statements about his mental

7   impairments. Pl.'s Mot. at 16-18. The ALJ found that Plaintiff's medically determinable

8   impairments could be reasonably expected to cause his alleged symptoms, but he determined his

9   "statements concerning the intensity, persistence, and limiting effects of these symptoms are not

10  entirely consistent with the medical evidence and other evidence in the record." AR 751. Plaintiff

11  argues the reasons cited by the ALJ for dismissing his testimony were not specific, clear, or

12  convincing, nor did they take into account the entire case record. Pl.'s Mot. at 16.

13         **1.      Legal Standard**

14         The Ninth Circuit has "established a two-step analysis for determining the extent to which

15  a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th

16  Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical

17  evidence of an underlying impairment which could reasonably be expected to produce the pain or

18  other symptoms alleged." *Id.* "Second, if the claimant meets this first test, and there is no

19  evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her

20  symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v.*

21  *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported

22  by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278

23  F.3d at 959 (cleaned up).

24         "At the same time, the ALJ is not required to believe every allegation of [symptoms], or

25  else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. §

26  423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation and internal

27  quotations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). In determining

28  whether an individual's symptoms will reduce his capacities to perform work-related activities or

United States District Court
Northern District of California

13

1   abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or

2   between the testimony and the claimant's conduct; unexplained or inadequately explained failure

3   to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages

4   in daily activities inconsistent with the alleged symptoms." *Id.* (citations and internal quotation

5   marks omitted).  The clear and convincing standard "isn't whether our court is convinced, but

6   instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v.*

7   *Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

8           2.       **Analysis**

9           As discussed above, the ALJ found the medical record was inconsistent with a finding of

10  disability under the Act.  The ALJ noted that Plaintiff's mental health treatment records with Dr.

11  Palmer generally showed his mental impairments were well managed by medications and that Dr.

12  Palmer attributed his apathy and desire not to leave home to fatigue caused by untreated

13  obstructive sleep apnea.  AR 416-22, 429-31, 443-45, 735-37, 751.  Plaintiff's treatment visits to

14  Dr. Palmer from 2013 to 2017 were sporadic, with treatment notes consistently showing generally

15  normal examination findings and only mild symptoms of depression and anxiety.  AR 429-31,

16  443-45, 735-37, 751.  Again, Plaintiff's symptoms were generally attributed to untreated

17  obstructive sleep apnea.  *Id.*  Dr. Palmer's records consistently showed Zoloft was a "major help"

18  in managing Plaintiff's anxiety.  AR 443, 445, 750; *see Wellington v. Berryhill*, 878 F.3d 867, 876

19  (9th Cir. 2017) (evidence of effective treatment undermines disability claim).  Dr. Palmer also

20  noted Plaintiff's reported fatigue was due to his decision to stay awake until 4:00 a.m. playing

21  computer games and his inability to maintain a regular sleep schedule because "it's not so easy if

22  there is something good on T.V."  AR 420, 750; *see Bray v. Astrue*, 554 F.3d 1219, 1221-22 (9th

23  Cir. 2009) (upholding the ALJ's finding that the plaintiff's statements did not comport with

24  objective evidence in her medical record).  The ALJ also noted that, despite Plaintiff's alleged

25  inability to leave his home, he was able to go to Mendocino with his family in December 2017,

26  during which Plaintiff reported no panic attacks or depression.  AR 736, 751.  In considering

27  Plaintiff's subjective statements, the ALJ properly considered whether they were consistent with

28  this evidence.  20 C.F.R. § 404.1529(c)(3)(i), (iv)-(v) (stating that the Commissioner will consider

a claimant's daily activities and response to treatment when assessing symptom testimony).

Plaintiff argues the fact that he travelled to Mendocino with his family is not substantial evidence of an ability to maintain a regular work schedule.  Pl.'s Mot. at 17.  However, the ALJ offered Plaintiff's travel as one among many reasons for rejecting his testimony, finding it inconsistent with his allegations of disabling agoraphobia.  AR 748, 751; *see Trevizo*, 871 F.3d at 682 (ALJ must explain with specificity how an activity conflicts with testimony).  The ALJ reasonably determined that Plaintiff's ability to travel long distances did not support his claim of disabling limitations.  AR 751; *see* 20 C.F.R. § 404.1529(c)(3)(i); *Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").

Plaintiff next argues the ALJ erred in noting he had "generally normal mental status examinations" (AR 750-51), arguing that medical evaluations would not document whether symptoms of agoraphobia or panic disorder would prevent him from working full-time.  Pl.'s Mot. at 17.  It is true that an ALJ may not reject a claimant's "statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 404.1529(c)(2).  However, the ALJ is still required to consider the extent to which a claimant's subjective statements are consistent with objective medical evidence.  *See id.* ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.  We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.").  Here, the ALJ did just that, concluding that Plaintiff's allegations of disabling limitations were not supported by the medical evidence.  *See Bray*, 554 F.3d at 1221-22 (upholding the ALJ's finding that the plaintiff's statements did not comport with objective evidence in her medical record).

Plaintiff also objects to the ALJ's finding that he received minimal treatment, arguing he had good reason not to seek additional treatment due to his agoraphobia and personality disorder.

15

United States District Court
Northern District of California

Pl.'s Mot. at 18.  "Conservative treatment is not a proper basis for rejecting the claimant's credibility when the claimant has a good reason for not seeking more aggressive treatment." *Gillman v. Astrue*, 829 F. Supp. 2d 999, 1008 (W.D. Wash. 2011) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)).  Plaintiff argues "the ALJ entirely ignored the impact of [his] agoraphobia and personality disorder on his ability to obtain additional treatment and follow through on recommendations by his treating providers."  Pl.'s Mot. at 18.  However, Plaintiff does not cite any medical records to support this claim.  No medical personnel found Plaintiff was hindered from seeking treatment due to limitations resulting from agoraphobia or personality disorder.  Plaintiff also does not cite any record showing a contemporaneous report that he tried to seek treatment but failed to do so because of agoraphobia or personality disorder.  Again, it is Plaintiff, not the ALJ, who has the burden to show his impairments were disabling.  *See Ford*, 950 F.3d at 1154; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (failure to follow treatment supports a finding of no disability); *Trevizo*, 871 F.3d at 679 ("A claimant's subjective symptom testimony may be undermined by 'an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

In sum, the Court finds the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective symptoms.

**D.     Testimony of Plaintiff's Mother**

Plaintiff's mother provided testimony during the March 2017 hearing.  AR 56-60.  In considering this testimony, the ALJ found that her testimony was "largely a repetition of [Plaintiff's] own allegations and similarly unsupported."  AR 751.  The ALJ also found the testimony was insufficient to overcome the absence of supporting medical evidence.  *Id.*  Plaintiff argues the ALJ's dismissal of her testimony "was erroneous because it relied on the same faulty reasoning that was relied upon to dismiss [Plaintiff's] own statements.  Pl.'s Mot. at 18.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Competent lay witness testimony "cannot be disregarded without

comment," *Nguyen*, 100 F.3d at 1467, and in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ provided germane reasons for affording little weight to Plaintiff's mother's testimony, finding it was duplicative of Plaintiff's testimony and contradicted by the medical evidence of record. "The ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Devon R. M. v. Saul*, 2019 WL 3555250, at *11 (N.D. Cal. Aug. 5, 2019) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *Molina*, 674 F.3d at 1111 (finding an ALJ's failure to address a nonmedical source at all harmless where ALJ addressed claimant's similar testimony). Accordingly, the Court finds the ALJ provided germane reasons for affording little weight to Plaintiff's mother's testimony, and the decision must be affirmed.

**E.      Medical Evidence**

Plaintiff argues the ALJ failed in his evaluation of the medical opinions. AR 18-23.

**1.      Legal Standard**

Social Security regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.[8] 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has developed standards that guide the analysis of an ALJ's weighing of this medical evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).

---

[8] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, governs based on Plaintiff's filing date, August 6, 2014.

United States District Court
Northern District of California

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [nonexamining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or examining physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Charter*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (cleaned up). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion. . . ." *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

### 2.   Analysis

#### a.   Dr. Martin

Paul Martin, Ph.D., performed a psychological consultative examination of Plaintiff on

June 30, 2015.  AR 436-42.  Dr. Martin observed that Plaintiff was friendly and cooperative with a mental status examination that was normal except for a depressed mood and congruent effect.  AR 438.  Dr. Martin found Plaintiff had borderline scores in a number of areas, including attention, concentration, and processing speed.  AR 4389.  He noted the scores may have been depressed by Plaintiff's anxiety.  *Id.*  Dr. Martin found Plaintiff had "no significant difficulty with sustained attention and/or mental tracking."  AR 440.  He opined that Plaintiff had moderate limitation in his ability to complete a normal workday and workweek and his ability to deal with routine work stress, but otherwise he had no more than mild limitation.  AR 441.  The ALJ gave "partial weight" to Dr. Martin's opinion.  AR 752-53.  The ALJ noted Plaintiff's borderline scores but rejected these because they were inconsistent with the findings of Dr. Krikorian and Dr. Palmer, who noted at least average intelligence.  AR 752.  The ALJ found Dr. Martin's opinion was "generally supported by his normal mental status examination and Dr. Palmer's treatment records" but "resolved all discrepancies in the light most favorable to the claimant by finding he is limited to simple, low-stress work with postural and social limitations."  AR 752-53.

        Plaintiff argues the ALJ erred by not incorporating the moderate limitations opined by Dr. Martin in completing a normal workday and workweek into the RFC assessment.  Pl.'s Mot. at 19-20.  However, the ALJ specifically noted that "Dr. Martin opined the claimant has moderate limitation in his ability to complete a normal workday and workweek and his ability to deal with routine work stress, but otherwise has no more than mild limitation."  AR 752.  The ALJ also found Dr. Martin's "opinions are generally supported by his normal mental status examination and Dr. Palmer's treatment records" and therefore "resolved all discrepancies in the light most favorable to the claimant" by finding he "has moderate limitation in social functioning and concentration, persistence or pace such that he would be limited to simple, low-stress work with social limitations."  AR 752-53.  RFC is assessed by considering all the relevant evidence in a claimant's case record, 20 C.F.R. § 404.1545(a)(1), and it is the ALJ's responsibility to assess a claimant's RFC.  20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity.");  *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is

the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Here, the ALJ properly considered the record as a whole, including Dr. Martin's opinion that Plaintiff "has moderate limitation in his ability to complete a normal workday and workweek and his ability to deal with routine work stress, but otherwise has no more than mild limitation." AR 752-53. The ALJ also considered the State agency psychological consultants' opinions, who found generally normal mental status examinations; that Dr. Palmer's "minimal and unremarkable treatment records" showed "significant improvement on medications with unremarkable mental status examinations and attribution of the claimant's reported symptoms to untreated obstructive sleep apnea"; Dr. Newman's "essentially normal physical examination and the claimant's minimal treatment for medical conditions during the relevant period in this case"; and Dr. Stafford's "essentially normal mental status examination with observation of euthymic mood and intact memory and concentration." AR 752-53. As the ALJ properly considered all the relevant evidence in assessing Plaintiff's RFC, the Court finds the ALJ's decision must be affirmed on this ground.

### b. Dr. Krikorian

On November 24, 2019, Natasha Krikorian, Psy.D., performed a psychological consultative examination. AR 719-29. Dr. Krikorian's examination was normal except for reported "low energy and some anxiety." AR 721. Dr. Krikorian found Plaintiff's attention, concentration, calculations, and memory were unimpaired. *Id.* Plaintiff denied suicidal ideation, auditory and visual hallucinations, and homicidal ideation. *Id.* A WAIS-IV test revealed average to low average intelligence. AR 722-23. Dr. Krikorian opined that Plaintiff had moderate to marked impairment in his ability to complete a normal workday but was otherwise unimpaired. AR 725-26. The ALJ assigned only "some weight" to Dr. Krikorian's opinion, determining that her findings of marked limitation were unsupported by her observations as well as the record as a whole. AR 753. The ALJ noted it "is based on a November 24, 2019 psychological consultative examination and has little bearing on the claimant's actual level of functioning during the relevant period in this case, which ended on March 31, 2018." *Id.* The ALJ found Dr. Krikorian's opinion of essentially listing-level impairment with marked limitation in concentrating, persisting, or

1    maintaining pace and adapting or managing oneself were unsupported by her own normal mental

2    status examination and Dr. Palmer's treatment notes during the relevant period. *Id.* The ALJ also

3    noted that Dr. Krikorian's opinion was "grossly inconsistent" with the treatment notes from the

4    two visits Plaintiff made to Dr. Palmer in 2019, in which Dr. Palmer found Plaintiff "can explore

5    things," if interested, and that he remained noncompliant for obstructive sleep apnea. *Id.* The ALJ

6    also noted that Dr. Palmer's treatment notes indicated surprise that Plaintiff's claim was in federal

7    court, as Dr. Palmer opined that Plaintiff had "no reasonable appeal possible [with] SSDI." *Id.*

8    (alteration in original).

9         Plaintiff argues it was improper for the ALJ to note that Dr. Krikorian's opinion was based

10    on a November 2019 examination because "*this Court already found that this was not a legitimate*

11    *reason for assigning less weight to her opinion*." Pl.'s Mot. at 20 (emphasis in original) (citing

12    AR 836). However, in the December 30, 2021 decision, the Court held that "assigning [Dr.

13    Krikorian's] opinion less weight on this fact alone" was erroneous. AR 836. In the instant case,

14    the ALJ provided alternative reasons for his assessment of Dr. Krikorian's opinion, noting the

15    marked limitation findings were unsupported by her own observations and by the record as a

16    whole. AR 753. Accordingly, any error here is harmless. *See Miller v. Berryhill*, 686 F. App'x

17    478, 478 (9th Cir. 2017) (ALJ's citation to one improper reason for rejecting opinion "would be

18    harmless in this case because the ALJ rejected [the] opinion for another reason that is supported by

19    the record") (citing *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *see also*

20    *Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless").

21         Plaintiff also argues the ALJ erred in his decision to give only some weight to Dr.

22    Krikorian's opinion based in part on inconsistencies with the treatment notes of Dr. Palmer. Pl.'s

23    Mot. at 20-21. Plaintiff argues "an inability to engage in day-to-day activities or follow through

24    on appropriate medical treatment for a physical condition is consistent with marked limitations in

25    the area of adapting and managing oneself, and the ALJ failed to provide any cogent analysis or

26    reference to objective medical evidence for his interpretation." *Id.* at 21. However, as discussed

27    above, the ALJ found that the record as a whole reflects that Plaintiff's repeated noncompliance

28    with treatment was not due to a mental disorder. Indeed, the ALJ noted numerous instances where

United States District Court
Northern District of California

Plaintiff's complaints focused on fatigue, tiredness, and apathy, and that these symptoms resulted from obstructive sleep apnea, a condition for which Plaintiff had been noncompliant with treatment.  AR 416-22.  Dr. Palmer even stated that Plaintiff had not improved because he was "generally not hearing what [he] suggest[ed]."  AR 419.  Dr. Palmer noted that although Plaintiff "claims his medical problems are severe," in fact "they are <u>not</u> and he is not doing what he can do to stop it . . . or get it treated."  *Id.* (emphasis in original).  As such, the Court finds the record supports the ALJ's interpretation of the evidence.  *See Ford*, 950 F.3d at 1154; *Jones v. Astrue*, 499 F. App'x 676, 677 (9th Cir. 2012) ("[T]he record supports the ALJ's decision not to give controlling or great weight to Dr. Johnson's opinion because the ALJ reasonably found that the treatment notes reflecting a conservative course of treatment provided little in the way of support for Dr. Johnson's conclusory statement regarding Jones's ability to work") (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  As such, the ALJ's decision must be affirmed on this ground.

### c.      Dr. Palmer

At a March 29, 2013, appointment, Dr. Palmer provided Plaintiff with a work excuse until August 2013.  AR 419.  The ALJ found this "unpersuasive because it is unsupported by the unremarkable mental status examinations in his treatment notes."  AR 746.  The ALJ also gave "little weight" to Dr. Palmer's 2015 finding that Plaintiff did not seem capable of change or work, as the ALJ found such conclusion was based on subjective complaints and not supported by Plaintiff's normal mental status examinations in the record.  AR 747 (citing AR 429).  Plaintiff argues "mental status examinations would not reasonably expose limitations in maintaining regular work attendance or adapting to workplace stressors, as the demands of biannual psychiatric appointments with a familiar provider are simply not comparable to the demands of full-time, competitive work."  Pl.'s Mot. at 21.  However, the ALJ may properly consider the extent to which an opinion is consistent with the record as a whole – including other medical records – when assessing the weight to assign to such opinion.  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  Plaintiff also argues that "while Dr. Palmer's opinions were likely and

1    rightfully informed by [his] subjective complaints," "there is no indication that the ALJ considered

2    Dr. Palmer's years-long treating relationship with [him], as required by 20 C.F.R. § 404.1527(c)."

3    Pl.'s Mot. at 21-22.   Contrary to Plaintiff's argument, the ALJ's decision includes a detailed

4    description of Dr. Palmer's treatment over the course of many years.   AR 745-49.   As such, the

5    Court finds the ALJ properly considered Dr. Palmer's opinion and the decision must be affirmed

6    on this ground.

7                        **d.    Reviewing Doctors**

8        The ALJ assigned "great weight" to the opinions of the State agency psychological

9    consultants, finding they were supported by the medical evidence of record, including generally

10   normal mental status examinations in consultative examinations and the minimal and

11   unremarkable mental status examinations and attribution of Plaintiff's reported symptoms to

12   untreated obstructive sleep apnea.   AR 67-80, 82-99, 752.   Thus, the ALJ found that Plaintiff had

13   moderate limitation in social functioning and concentration, persistence or pace such that he would

14   be limited to simple, low-stress work with social limitations, as found in the RFC.   AR 750, 752.

15       Plaintiff argues the ALJ committed error in his assessment of these opinions for the same

16   reasons discussed above, namely that "Dr. Palmer's treatment records documented ongoing

17   agoraphobia and symptoms of personality disorder; they were not 'unremarkable,'" and that

18   "normal mental status examinations are not inconsistent with the limitations included in the

19   favorable medical opinions or the statements made by [Plaintiff] and his mother regarding the

20   impact of his agoraphobia."   Pl.'s Mot. at 22.   This argument is derivative of Plaintiff's criticisms

21   of the ALJ's decision discussed above and thus fails for the same reasons.

22       Plaintiff also argues the reviewing doctors' opinions were not sufficiently supported by

23   their own findings.   *Id.*   He notes "[t]he entirety of the initial psychological consultant's

24   explanation for her opinion was as follows: 'The Cl's impairments do not singularly or in

25   combination cause marked limitations . . . however, concentration, persistence and pace and social

26   functioning are somewhat affected and would cause moderate difficulties.   The reported symptoms

27   and limitations are considered credible as they are consistent with the MDIs noted in the record.'"

28   *Id.* (citing AR 74).   Plaintiff argues this was not internally consistent because if his "reported

United States District Court
Northern District of California

symptoms and limitations" were credible, then he would be unable to complete a normal workday or workweek because of excessive absences or interruptions due to anxiety and agoraphobia. *Id.* Plaintiff further argues this explanation does not provide any analysis for how the opinion was supported and that, on reconsideration, "the psychological consultant offered no explanation for her findings of moderate limitations in some areas; the initial analysis was simply copied and pasted." *Id.* (citing AR 90, 92). However, as noted above, the ALJ found these opinions were independently supported by the medical evidence of record and may therefore serve as substantial evidence. *See Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Finally, Plaintiff argues that even if the opinions were deserving of "great weight," the ALJ failed to incorporate aspects of them into the RFC. Pl.'s Mot. at 23. Plaintiff notes the psychological consultants found a "moderate" limitation in Plaintiff's ability to complete a normal workday or workweek without an unreasonable number and length of rest periods and reiterated that he would have interruptions (albeit infrequent) to his ability to work (AR 77, 95-96), but "the ALJ included no rest periods or absences at all in his RFC." Pl.'s Mot. at 23. As a preliminary matter, Plaintiff is incorrect in stating the ALJ included "no rest periods," as the RFC specifically includes such breaks. *See* AR 749-50. To the extent Plaintiff argues the ALJ should have provided more breaks than that which he opined in the RFC, as noted above, it is the ALJ's responsibility to assess a claimant's RFC, not any one doctor. *See* 20 C.F.R. § 404.1546(c); *Vertigan*, 260 F.3d at 1049; *Jennifer H. v. Saul*, 2020 WL 3128875, at *14 (N.D. Cal. June 12, 2020) ("[T]he Court notes that RFC is an administrative finding, not a medical determination, and need not match any one physician's opinion.") (citing 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner")). As the ALJ properly assessed Plaintiff's RFC by considering all the relevant evidence in the record, including the State Agency consultants' opinions, the decision must be affirmed on this ground.

**F.     Previous Administrative Decision**

In the most recent decision, the ALJ adopted findings from the prior administrative decision, including "the prior 'paragraph B' analysis because it is uncontested by the District Court remand." AR 744. Plaintiff argues the ALJ erred in adopting these findings because "the District Court found that the ALJ had erred in assigning little weight to the opinion of Dr. Krikorian, who diagnosed [Plaintiff] with agoraphobia, and had also erred in discounting [his] testimony about his agoraphobia." Pl.'s Mot. at 23 (citing AR 839). "It was therefore erroneous for the ALJ to blindly adopt the prior paragraph B findings without reconsideration of Dr. Krikorian's opinion and [Plaintiff's] testimony, which relate directly to the paragraph B criteria of listing 12.06." *Id.*

In the prior decision, the Court found that "while the ALJ provided evidence that he relied on for his paragraph B determination, he did not provide more than conclusory remarks concerning the paragraph C criteria. Without more information, the court cannot assess whether there was sufficient evidence underlying the ALJ's determination that the plaintiff did not meet the paragraph C criteria." AR 841. The Court also noted "[t]he administrative record provides documentation of the claimant's severe anxiety disorder over a period of 2 years, and evidence that he received medical treatment (Zoloft), mental health therapy, and lived in a supportive environment with his mother." *Id.* As such, the Court remanded for reconsideration of "whether there was sufficient evidence underlying the ALJ's determination that the plaintiff did not meet the paragraph C criteria for 12.06(c)." *Id.* These findings do not address the paragraph B criteria and instead focus on paragraph C. The prior decision makes no findings as to paragraph B, and there is no indication in the record that the ALJ's paragraph B findings were contested. As such, there is no indication it was improper for the ALJ to adopt those findings. Further, as discussed above, in the most recent decision, the ALJ properly reconsidered Dr. Krikorian's opinion and Plaintiff's subjective complaints. Thus, Plaintiff's argument regarding this evidence is without merit. Accordingly, the ALJ's decision must be affirmed on this ground.

**G.     Vocational Expert Testimony**

Plaintiff argues the ALJ committed error because "[a]lthough the ALJ alleges to have

'resolved all discrepancies in the light most favorable to the claimant by finding he may sometimes miss up to one day of work per month' (AR 750), and yet no such limitation is included in the decisional RFC." Pl.'s Mot. at 16. Plaintiff argues that "[v]ocational evidence, obtained by the ALJ, verified that any absence during the first ninety days of employment would preclude all work, as would absences averaging once per month on a consistent basis," and that "[f]ailure to include the once per month absence in the RFC, with no explanation as to how none of [Plaintiff's] absences would fall in the first ninety days of employment when he was not leaving his home for weeks at a time, was therefore not harmless error." *Id.* (citing AR 949-51).

At the January 5, 2023 hearing, the VE testified that Plaintiff could not perform any past relevant work but could perform the jobs of routing clerk, price marker, and assembler of small parts. AR 781-82. However, the VE testified that "in the unskilled labor market, if an individual is absent the first 90 days, it's very difficult to hold on to that job." AR 782. In response to further questioning from the ALJ on this point, the VE confirmed: "So if during the first 90 days they're absent, then that individual could not perform work in the national economy." AR 783. On February 1 the ALJ requested clarification regarding this testimony. AR 944-51. Specifically, the ALJ asked the following:

> As a caveat to your testimony, you explained that in an unskilled labor market absences within the first 90 days of employment would not be tolerable by an employer and that as a result the employee would be terminated.

> Please clarify and indicate whether the three jobs you identified above require a probationary period, how long the probationary period would be, and how long it would take to learn each job.

AR 950. In response the VE stated that, under the Affordable Care Act, employers are required to provide health insurance to employees no later than 90 days from the date of employment. *Id.* The VE also stated that probationary periods vary widely from state to state and between industries, and unskilled jobs require only a short period of time to learn, up to and including one month. *Id.* The VE also stated: "Employers have the least tolerance for missed work and/or absences for the unskilled worker. The employer can hire the next replacement worker for unskilled jobs and have them on duty immediately." *Id.* "Based on the testimony of the

1    vocational expert, the [ALJ] conclude[d] that, through the date last insured, considering the

2    claimant's age, education, work experience, and residual functional capacity, the claimant was

3    capable of making a successful adjustment to other work that existed in significant numbers in the

4    national economy.  A finding of 'not disabled' is therefore appropriate under the framework of the

5    above-cited rule."  AR 755.

6            As the Supreme Court has recognized, a vocational expert is a "professional," contracted to

7    provide "impartial testimony," who "must have expertise and current knowledge" of the

8    "conditions and physical demands" associated with various jobs, as well as "[i]nvolvement in or

9    knowledge of placing adult workers[ ] with disabilities[ ] into jobs." *Biestek*, 139 S. Ct. at 1152

10   (simplified).  An ALJ's reliance on qualified, cogent, and uncontradicted expert testimony

11   generally constitutes substantial evidence in support of an ALJ's finding.  *See Ford*, 950 F.3d at

12   1159.  Here, however, the VE's testimony appears to be contradictory.  While testifying that

13   Plaintiff could work as a routing clerk, price marker, and assembler of small parts, the VE also

14   testified that it's difficult to hold such jobs if an individual is absent in the first 90 days.  When

15   asked to clarify, the VE's response did not answer the ALJ's specific question (whether the three

16   jobs require a probationary period, how long the probationary period would be, and how long it

17   would take to learn each job), and instead appears to show that employers would not have

18   tolerance for Plaintiff, who "may sometimes miss up to one day of work per month."  AR 750.

19   The ALJ did not make any further effort to resolve this conflict and does not address it in his

20   opinion.  In such circumstances, the ALJ may not rely on the vocational expert's testimony to find

21   that Plaintiff could perform the listed positions.  *See Hamilton v. Comm'r of Soc. Sec. Admin.*, 464

22   F. App'x 681, 682 (9th Cir. 2012) ("Substantial evidence does not support a finding of disability

23   where the VE's testimony either is contradictory or responds to an inaccurate hypothetical."); *Lucy*

24   *v. Saul*, 2020 WL 1318803, at *10 (W.D. Tenn. Mar. 20, 2020) (ALJ commits reversible error

25   where she "relie[s] on [a] vocational expert's initial, confident testimony about the jobs the

26   claimant could perform without recognizing the expert's conclusions collapsed on cross

27   examination."); *Reed v. Comm'r of Soc. Sec.*, 2021 WL 928401, at *3-5 (S.D. Ohio Mar. 11,

28   2021) (vacating a decision by the ALJ because it relied on a vocational expert's testimony that the

United States District Court
Northern District of California

claimant "would be able to perform the requirements of specific occupations such as housekeeping cleaner, folder, and inspector" but on cross-examination the "[claimant's] ability to perform these jobs was brought into question by the vocational expert's own testimony"); *Diane B. v. Kijakazi*, 2022 WL 94915, at *15 (N.D. Cal. Jan. 10, 2022) (same).

Where a vocational expert's testimony appears to be self-contradictory, remand is appropriate. *See Hamilton*, 464 F. App'x at 682 (remanding when light-work positions described by vocational expert could not accommodate claimant's at-will sit/stand limitation "according to the VE's own testimony"); *Hernandez v. Colvin*, 2014 WL 1800408, at *5 (C.D. Cal. May 6, 2014) (remanding where vocational expert presented conflicting testimony, first stating that an individual capable of only six hours of standing could perform claimant's past relevant work, then conceding that those positions as typically performed required standing throughout an eight-hour day except for the 50 minutes allotted for lunch and breaks); *Garcia v. Colvin*, 2015 WL 2384172, at *13 (S.D. Cal. May 18, 2015) (remand appropriate where ALJ failed to resolve seemingly contradictory testimony by vocational expert); *Williams v. Soc. Sec. Admin.*, 357 F. App'x 741, 742 (9th Cir. 2009) (remanding because vocational expert provided conflicting testimony as to whether doctor's report required a finding of disability at step five).

Here, it remains unclear whether Plaintiff would be capable of performing the jobs identified by the ALJ, and the ALJ's failure to clarify this issue constitutes error. Accordingly, the Court remands on this issue.

## H.     Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is

not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim because he found Plaintiff "may sometimes miss up to one day of work per month," the VE testified that just one absence during the first 90 days of employment could render Plaintiff incapable of sustaining work, and the ALJ failed to clarify whether Plaintiff could still perform the three jobs listed by the VE despite these potential absences. However, even though this case has already been remanded twice for other issues, it is not clear that the ALJ would be required to find Plaintiff disabled after clarifying this issue. Accordingly, remand for further proceedings is appropriate.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision. This matter is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: April 2, 2024

THOMAS S. HIXSON
United States Magistrate Judge